UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          Case No.: 6:19-bk-07887-KSJ
                                                Chapter 7
DAVID A. RODRIGUEZ,

        Debtor.
_____/
ANGELA VALCARCEL-ROTH,                          Adv. P. No.:_____
A/K/A ANGELA ROTH

        Plaintiff,

v.

DAVID A. RODRIGUEZ,

        Defendant.
_____/

## **COMPLAINT**

        Angela Valcarcel-Roth, a/k/a Angela Roth (the "Plaintiff"), a creditor in the above-
caption chapter 7 bankruptcy case, files this Complaint against Debtor, David A. Rodriguez (the
"Debtor"), objecting to his discharge pursuant to Section 727(a)(2)(A) and (a)(4)(A) of the
Bankruptcy Code. In support of this Complaint, Plaintiff states as follows:

## **JURISDICTION AND VENUE**

        1.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §
1334(b), 28 U.S.C.§§ 157(a) and (b)(2)(J), and the Amended Order of Reference, dated February
22, 2012, entered by the United States District Court for the Middle District of Florida concerning
the referral of bankruptcy matters to this Court.

        2.      This is an adversary proceeding objecting to the Debtor's discharge pursuant to
Section 727(a)(2)(A) and (4)(A) of the Bankruptcy Code and Fed. R. Bankr. P. 7001(4).

3.      This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(J).

4.      All conditions precedent to the filing of this action have occurred, have been performed, or have been waived.

## PARTIES

5.      Plaintiff is an individual residing in Kissimmee, Florida.

6.      The Debtor is an individual residing in Oviedo, Florida.

## FACTS COMMON TO ALL ALLEGATIONS

**A.      The Real Property and the Loan Transaction**.

7.      Plaintiff is Debtor's ex mother in law.

8.      In or around April 2007, while Debtor was still married to Plaintiff's daughter, the Plaintiff loaned $50,000.00 to the Debtor and Plaintiff's daughter to assist in the purchase of the real property located at 2850 N. C.R. 426, Oviedo, FL 32765-9131 (the "Real Property").

9.      The Real Property is located on approximately 6.5 acres of land, including a pond.

10.     The Real Property consists of at least three structures, including a two-story house with seven bedrooms, plus a "tack room" that has been converted into a bedroom, a barn, and a storage building.

11.     On May 13, 2020, Debtor testified at his deposition, that despite having approximately 24 years of experience working in construction, he did not know, and could not estimate, how many square feet comprised the two-story primary residence building on the Real Property. Once the undersigned counsel reminded him of his extensive expertise in the construction field, he conceded that the square footage is approximately 4200 square feet.

12.     On May 13, 2020, the Debtor testified at his deposition that the primary residence building on the Real Property sits on approximately one quarter of an acre. Again, his first answer in response to the question regarding the size of the building's footprint was that he did not know.

13.     In his Schedule C, the Debtor claims a homestead exemption for the entirety of the Real Property pursuant to Fla. Const. Art. X, § 4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02.

14.     Under the terms of the 2014 divorce between the Debtor and Plaintiff's daughter, Debtor assumed responsibility for the $50,000 debt owed to Plaintiff.

15.     In testimony given by the Debtor at a hearing held on July 23, 2014, in connection with the 2014 divorce proceeding, he acknowledged the $50,000 debt to Plaintiff and stated his intention to repay the debt.

16.     Debtor listed in his original Bankruptcy Schedule E/F (Main Case Doc. No. 9) at least three separate entries admitting and acknowledging the $50,000 debt obligation to Plaintiff, including legal fees. The Debtor failed to mark any of the entries relating to such debt as "contingent, unliquidated, or disputed" in his original Schedule E/F.

17.     It was only after Plaintiff's counsel attended the Debtor's Section 341 meeting to examine the Debtor, and filed an objection to the Debtor's homestead exemption that the Debtor amended his Bankruptcy Schedules E/F to completely remove the listing of $50,000 debt, despite having acknowledged the loan in prior testimony given in connection with his divorce proceeding, and despite the original position taken in his Schedule E/F that such debt was not contingent, disputed, or unliquidated.

18.     Plaintiff timely filed a proof of claim regarding the debt obligation. (Claim No. 6-1).

19.     As of the filing of this Complaint, no objection to Plaintiff's claim has been filed.

20.    In fact, the $50,000 loan from Plaintiff to Debtor was never intended to be a gift and was always characterized as a loan by all parties.

21.    It was only after Debtor was about to became solely indebted to Plaintiff on the $50,000 obligation through the 2014 divorce proceeding, that the Debtor began to engineer a story about the loan initially being treated as a gift.

22.    Throughout the legal history between the parties, the Debtor has a habit of providing vague and evasive testimony in an apparent attempt to delay, defraud and thwart Plaintiff from collecting the money owed to her.

23.    At the Debtor's most recent deposition taken in the main bankruptcy case on May 13, 2020, most of his responses were that he could not remember the answer, or he did not know the answer.

24.    Shortly after testifying that he once had a tenant named Francis living in one of the apartments on the Real Property for a year or more without requiring her to pay rent, in part, because he allegedly wanted an adult to be present in the house with his children while he was at work, the Debtor then testified that he did not know, or could not remember, Francis' last name.

25.    At all relevant times, including during the time when Francis resided as a tenant on the Real Property, the Debtor did not have fully custody of his children. Instead he shared custody with his ex-wife, and only had the children fifty percent of the time.

26.    Upon information and belief, the children have never been baby-sat for by Francis.

27.    It is highly unlikely given the Debtor's admitted concern for his children's welfare, and the fact that Francis lived in the room for approximately two years, that the Debtor would not know her last name. The Debtor also refused to provide copies of any of the rent checks Francis

paid to the Debtor, which presumably listed her first and last name, claiming that he had no way to obtain them from his bank.

28.    Further, upon information and belief, the Debtor is also very particular about who babysits for his children, including requiring that any such babysitter observe the same religion that he does. It is not known what religion Francis may have observed while residing on the Real Property, if any. The point is that given the Debtor's particular stringent requirements for babysitters, it is highly unlikely he would invite a woman, whose last name he cannot remember, to live in his house for free, in exchange for baby-sitting type services.

29.    This pattern of vague, evasive, and non-credible testimony continued throughout the Debtor's deposition held on May 13, 2020. Whenever the undersigned counsel asked the Debtor for the full name of any of the non-family member tenants the Debtor admitted have resided at the Real Property in the past, the Debtor stated that he either did not know or could not remember what the tenants' last names were, despite the fact that all of the tenants at issue lived at the Real Property sometime in the past four years.

30.    The Debtor did provide the last name of the current tenants, Richard and Krystal Aubrey, but he was aware that Plaintiff already had this information because Plaintiff included it in an affidavit attached to its Objection to the Debtor's Homestead Exemption. (Main Case Doc. No.15).

31.    Carolina Gonzalez Rodriguez ("Mrs. Rodriguez"), the Debtor's current wife and non-filing spouse, was also deposed on May 13, 2020.

32.    At certain points, Mrs. Rodriguez also provided vague, evasive and/or non-credible testimony in an effort to corroborate the Debtor's engineered stories. Her vague responses often coincided with her husband's vague responses. She, too, could not remember or did not know the

5

last names of any of the tenants, except for the Aubreys, which was a fact already known to Plaintiff.

33.     In addition, her testimony lacked credibility on many points regarding certain assets the Debtor failed to disclose in his Schedules and Statements, including the farm animals, the boats, and the 2016 Toyota Tacoma truck. She claimed to have sole ownership of each of these assets, despite also testifying that: (i) she had no income due to a job loss in early 2019; (ii) she maintained no bank accounts in her own name, or jointly with the Debtor; and (iii) any money she spent came directly from the Debtor.

    **B.**    **Debtor's Bankruptcy Filing**

34.     On December 2, 2019 (the "Petition Date"), shortly after Plaintiff filed a lawsuit against the Debtor in state court to collect the $50,000 debt, the Debtor filed the instant chapter 7 bankruptcy case.

35.     The claims bar deadline for non-governmental claims expired on April 20, 2020.

36.     According to the claims bar registry, the total amount of timely claims filed against the Debtor's bankruptcy estate is $55,133.92. Of that amount, $50,000.00 is comprised of Plaintiff's claim.

37.     Debtor's original Schedule I indicates that as of the Petition Date, the Debtor's current monthly income was approximately $6,364.48 per month. (Main Case Doc. No. 9). Again, at the May 13, 2020 deposition, the Debtor had a hard time recollecting whether this amount accurately reflected his current monthly income, but eventually conceded that it could be correct.

38.     Given the miniscule amount of other claims filed, the timing of the bankruptcy proceeding, and the somewhat generous monthly income amount the Debtor was earning at the

time of the filing of the Petition, it appears that the Debtor's sole purpose for filing the bankruptcy case was to avoid paying Plaintiff's claim.

39.     However, in order to obtain a discharge fraudulently, the Debtor has intentionally concealed, hidden, or transferred certain income earned from his alleged homestead property, and interests in certain non-exempt property, including a 2016 Toyota Tacoma, in the year preceding the bankruptcy filing.

40.     Further, prior to the Petition Date, Debtor took steps to fraudulently conceal from his creditors and the bankruptcy estate his property interests in the following property: (i) rental income, or other income earned and/or continuing, through at least November 2019, from a tenant with the first name Elizabeth, and whose last name the Debtor testified he cannot recall; (ii) four to five canoes; (iii) a truck trailer for a mower or polisher; (iv) farm animals, including, a chicken, or chickens, and a cow, or cows. In addition, the Debtor intentionally and willfully concealed the transfer of his interest in a 2016 Toyota Tacoma truck to his wife by his employer, at his direction. None of these items were accurately disclosed in the Debtor's Schedules or Statement of Financial Affairs.

41.     As a result of his misconduct described herein, the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and/or (a)(4)(A).

### **COUNT I**
### **Denial of Discharge under 11 U.S.C. § 727(a)(4)(A) - Canoes**

42.     Paragraphs 1 through 41 of the Complaint are restated and realleged, as if set forth fully herein.

43.     Prior to the Petition Date, Debtor took steps to fraudulently conceal from his creditors and the bankruptcy estate his property interests in four to five in his possession, located at his Real Property, as of the Petition Date.

44.    At various times at his Section 341 meeting and during his May 13, 2020 deposition, the Debtor alternately denied having such property, mischaracterized the nature of his interest in such property, and/or acknowledged owning such property.

45.    Specifically, the Debtor has provided confusing and non-credible testimony as to his ownership interests in the four to five canoes as of the Petition Date.

46.    His testimony varied from acknowledging having four to five canoes to having only one. At several points, he testified that all or most of the boats on the Real Property belonged to others. At least once, he testified that his wife owned two of the boats.

47.    At least once, he testified that his son owned one of the boats.

48.    Several times, he testified that a friend or two owned one or more of the boats.

49.    It was indeed hard for the Debtor to recall either the number of canoes he owned, possessed, or, if he was not the owner, who allegedly owned such boats.

50.    The Debtor eventually admitted that he definitely owned one of the boats as of the Petition Date.

51.    However, no watercraft were listed as assets on the Debtor's original Schedules A/B (Main Case Doc. No. 9). It was not until after the undersigned counsel pressed the Debtor about his interests in the four or five boats at the Section 341 meeting, that the Debtor finally admitted to the existence of the boats on his Property.

52.    At that point, the Debtor agreed to "buy back" his interest in one watercraft from the estate, and he then amended his Schedule A/B to add one "Jon Boat" with an alleged value of $100.00.

53.    Given the Debtor's inconsistent and varying testimony on the issue, the location of the boats on his Real Property, and the Debtor's pattern of providing intentionally vague or

misleading testimony in an effort to thwart creditors, the Debtor's testimony that all four or five canoes belong to other people is simply not credible.

54.     Debtor possessed and owned all four or five canoes as of the Petition Date.

55.     Debtor has willfully and intentionally failed to disclose and has concealed the true nature and amount of his interest in the four to five canoes he possessed as of the Petition Date.

56.     Debtor's repeated denial of the true nature of his interest in the four or five canoes he possessed on his Real Property as of the Petition Date, both at his Section 341 meeting of creditors and during his testimony given at the May 13, 2020 deposition in the main bankruptcy case, constitutes willful, intentional, and material false oaths to this Court.

57.     By willfully and intentionally failing to report his interest in the four or five canoes in his original bankruptcy schedules to the detriment of the bankruptcy estate and his creditors, the Debtor made a false oath to the Court by filing incomplete bankruptcy schedules. Such false oath is material to the administration of the Debtor's estate. Amending his Schedules A/B to later add one boat does not provide protection to the Debtor from denial of his discharge.

58.     Debtor's discharge should be denied as a result of the Debtor's fraudulent concealment of his interest in the four or five canoes, and, the resulting false oaths he willfully and intentionally has made to this Court regarding same.

WHEREFORE, Plaintiff respectfully requests the entry of a final judgment declaring that the Debtor be denied a discharge under 11 U.S.C. §727(a)(4)(A).

### <u>COUNT II</u>
### <u>Denial of Discharge under 11 U.S.C. § 727(a)(4)(A) – Trailer and Polisher</u>

59.     Paragraphs 1 through 41 of the Complaint are restated and realleged, as if set forth fully herein.

60.     Prior to the Petition Date, Debtor took steps to fraudulently conceal from his creditors and the bankruptcy estate his property interests in a certain trailer and polisher he possessed, located at his Real Property, as of the Petition Date.

61.     At his Section 341 meeting and during his May 13, 2020 deposition, the Debtor denied owning the trailer and polisher, but admitted that he had possession of it at his Real Property.

62.     Neither the trailer, nor the polisher, was listed in the Debtor's original Schedules A/B (Main Case Doc. No. 9).

63.     As of the filing of this Complaint, the Debtor has not amended his Schedules to include the trailer and polisher as property of the estate.

64.     Given the Debtor's possession of the property, and his pattern of providing intentionally vague or misleading testimony in an effort to thwart creditors, the Debtor's testimony that the trailer and polisher belong to someone else is simply not credible.

65.     Debtor possessed and owned the trailer and polisher as of the Petition Date.

66.     Debtor has willfully and intentionally failed to disclose and concealed the true nature and amount of his interest, in the trailer and polisher he possessed as of the Petition Date.

67.     Debtor's repeated denial of the true nature of his interest in the trailer and polisher he possessed on his Real Property as of the Petition Date, both at his Section 341 meeting of creditors and during his testimony given at the May 13, 2020 deposition in the main bankruptcy case, constitutes willful, intentional, and material false oaths to this Court.

68.     By willfully and intentionally failing to report his interest in the trailer and polisher in his original bankruptcy schedules to the detriment of the bankruptcy estate and his creditors, the Debtor made a false oath to the Court by filing incomplete bankruptcy schedules. Such false oath

is material to the administration of the Debtor's estate. Amending his Schedules A/B to later add one boat does not provide protection to the Debtor from denial of his discharge.

69.     Debtor's discharge should be denied as a result of the Debtor's fraudulent concealment of his interest in the trailer and polisher, and, the resulting false oaths he willfully and intentionally has made to this Court regarding same.

WHEREFORE, Plaintiff respectfully requests the entry of a final judgment declaring that the Debtor be denied a discharge under 11 U.S.C. §727(a)(4)(A).

### COUNT III
### Denial of Discharge under 11 U.S.C. § 727(a)(4)(A) – Farm Animals

70.     Paragraphs 1 through 41 of the Complaint are restated and realleged, as if set forth fully herein.

71.     Prior to the Petition Date, Debtor took steps to fraudulently conceal from his creditors and the bankruptcy estate his property interests in four cows and one to two chickens he possessed at his Real Property (collectively, the "Farm Animals"), as of the Petition Date.

72.     At various times at his Section 341 meeting and during his May 13, 2020 deposition, the Debtor alternately denied having such property, mischaracterized the nature of his interest in such property, and/or acknowledged owning at least part of such property.

73.     Specifically, the Debtor has provided confusing and non-credible testimony as to his ownership interests in the Farm Animals as of the Petition Date.

74.     His testimony varied from acknowledging having owned one cow and one chicken to denying owning any. Eventually, he testified that all or most of the Farm Animals on the Real Property belonged only to his wife, or his children.

75.     The Debtor's memory was once again spotty at the May 13, 2020 deposition, when he was asked about his interests in the Farm Animals as of the Petition Date. He had trouble

recalling whether he owned the animals or his wife did, but, he did eventually stick to the story that he had one cow as of the Petition Date, any other cows belonged to his wife, and the chickens perhaps belonged to his children, although he could not say for certain. He even alluded to the possibility that they belong to no one since they roam free.

76.    However, no Farm Animals were listed as assets on the Debtor's original Schedules A/B (Main Case Doc. No. 9).

77.    No Farm Animals were listed on the Debtor's Amended Schedules A/B (Main Case Doc. No. 22).

78.    Given the Debtor's spotty memory and vague testimony on the issue, the location of the Farm Animals on his Real Property, and the Debtor's pattern of providing intentionally vague or misleading testimony in an effort to thwart creditors, the Debtor's testimony that all of the Farm Animals belong to other people is simply not credible.

79.    Debtor possessed and owned all of the Farm Animals as of the Petition Date.

80.    Debtor has willfully and intentionally failed to disclose and has concealed the true nature and amount of his interest in the Farm Animals he possessed as of the Petition Date.

81.    Debtor's repeated denial of the true nature of his interest in the Farm Animals he possessed on his Real Property as of the Petition Date, both at his Section 341 meeting of creditors and during his testimony given at the May 13, 2020 deposition in the main bankruptcy case, constitutes willful, intentional, and material false oaths to this Court.

82.    By willfully and intentionally failing to report his interest in the Farm Animals in his original and amended bankruptcy schedules to the detriment of the bankruptcy estate and his creditors, the Debtor made a false oath to the Court by filing incomplete bankruptcy schedules. Such false oath is material to the administration of the Debtor's estate.

83.     Debtor's discharge should be denied as a result of the Debtor's fraudulent concealment of his interest in the Farm Animals, and, the resulting false oaths he willfully and intentionally has made to this Court regarding same.

WHEREFORE, Plaintiff respectfully requests the entry of a final judgment declaring that the Debtor be denied a discharge under 11 U.S.C. §727(a)(4)(A).

**COUNT IV**

**Denial of Discharge under 11 U.S.C. § 727(a)(4)(A) – Additional Income from Tenants**

84.     Paragraphs 1 through 41 of the Complaint are restated and realleged, as if set forth fully herein.

85.     Prior to the Petition Date, Debtor took steps to fraudulently conceal from his creditors and the bankruptcy estate his income for at least one tenant, having the first name of Elizabeth, residing at his Real Property until a few weeks prior to the Petition Date.

86.     Debtor's Schedules and Statement of Financial Affairs list no income or contributions from any tenant residing at the Real Property shortly before or on the Petition Date.

87.     Specifically, the Debtor testified at his Section 341 meeting and at his May 13, 2020 deposition that a tenant resided at the Real Property until mid-November 2019.

88.     At his May 13, 2020 deposition, the Debtor once again suffered a memory lapse and could not remember Elizabeth's last name, nor did he have her contact information. He did admit that she resided at the Real Property for about a year.

89.     At the Section 341 Meeting and the May 13, 2020 deposition, the Debtor denied ever receiving rental income from Elizabeth. At the deposition, the Debtor once again, claimed that he wanted an adult to be present when he wasn't home in order to justify his position that he did not receive rent. For all the same reasons this explanation was not plausible in connection with Francis, it is not plausible with Elizabeth, either. In fact, it is even less plausible with Elizabeth,

13

because the Debtor's non-filing spouse testified that she was unemployed as of January 2019. Presumably she would have taken on that responsibility. However, when pressed, the Debtor did admit that he did receive some payments from Elizabeth, which he characterized as "contributions" rather than "rent."

90.     However, no income or contributions from Elizabeth were listed on the Debtor's Schedules or Statements (Main Case Doc. No. 9).

91.     No income or contributions from Elizabeth were listed on the Debtor's Amended Schedules (Main Case Doc. No. 22).

92.     The Debtor's testimony is simply not credible. It does not follow that the Debtor provided free housing to a woman for the benefit of his children, when he cannot even recall the woman's last name, despite his testimony at the May 13, 2020 deposition that she lived on the Real Property for at least a year.

93.     Debtor has willfully and intentionally failed to disclose, and has concealed, the true nature and amount of the income he received from Elizabeth in his Schedules and Statements.

94.     Debtor's repeated denial, both at his Section 341 meeting of creditors and during his testimony given at the May 13, 2020 deposition in the main bankruptcy case, constitutes willful, intentional, and material false oaths to this Court.

95.     By willfully and intentionally failing to report his income from Elizabeth in his original and amended bankruptcy schedules to the detriment of the bankruptcy estate and his creditors, the Debtor made a false oath to the Court by filing incomplete bankruptcy schedules and statements. Such false oath is material to the administration of the Debtor's estate.

96.    Debtor's discharge should be denied as a result of the Debtor's fraudulent concealment of his income from Elizabeth, and, the resulting false oaths he willfully and intentionally has made to this Court regarding same.

WHEREFORE, Plaintiff respectfully requests the entry of a final judgment declaring that the Debtor be denied a discharge under 11 U.S.C. §727(a)(4)(A).

## <u>COUNT V</u>
## (Denial of Discharge under 11 U.S.C. § 727(a)(2)(A)) – 2016 Toyota Tacoma)

97.    Paragraphs 1 through 41 of the Complaint are restated and realleged, as if set forth fully herein.

98.    Pursuant to Section 727(a)(2)(A) of the Bankruptcy Code, the Debtor's discharge must be denied where he:

> (2)…with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A)    property of the debtor, within one year before the date of the filing of the petition….

99.    At the May 13, 2020 Deposition, the Debtor's non-filing spouse testified that in March or April of 2019, eight or nine months before the Petition Date, she purchased a 2016 Toyota Tacoma Truck, with her own money, despite having testified minutes earlier that she had no income and no job at that time.

100.    When pressed as to how she had money to purchase the truck out right, Mrs. Rodriguez testified that the Debtor's boss provided the money to purchase the truck.

101.    The truck was allegedly purchased outright in cash because Mrs. Rodriguez notably testified that she has no bank account.

102.    At the time of the truck purchase, Mrs. Rodriguez already owned another car which she still owns. However, according to her testimony, she prefers to drive the Debtor's Yukon, as opposed to the Toyota Tacoma or her other car.

103.    The Yukon was listed on the Debtor's schedules as an asset.

104.    The Toyota Tacoma was allegedly not listed on the Debtor's schedules because the Debtor and Mrs. Rodriguez allege that it belongs solely to Mrs. Rodriguez, despite the fact that they both provided testimony at the May 13, 2020 depositions admitting that the Debtor's boss paid for the truck, or at least provided the money to purchase the truck, as an apology of sorts to the Debtor when the Debtor and some of his colleagues approached the company in anger when the employer ended its policy of providing its managers with company-owned vehicles.

105.    Specifically, the Debtor testified at the May 13, 2020 deposition, and admitted, essentially, that he asked his boss to give the truck to his wife, or the money to purchase the truck, to his wife, because he "did not need" a car. It is not apparent why he felt the need to approach management in anger over the ending of the company car policy, along with his colleagues, if he did not need or want the truck.

106.    Notably, when the undersigned counsel asked the Debtor about the Toyota Tacoma at his Section 341 meeting, the Debtor simply testified that it was his wife's vehicle and did not disclose that his boss had purchased it as a consolation prize for the Debtor for the end of the company policy of providing company-owned vehicles to managers. His failure to disclose the transaction was willful and intentional, and was meant to delay, defraud and thwart creditors and the Debtor's bankruptcy estate.

107.    Debtor willfully and intentionally failed to disclose the truck transaction and the transfer of his interest in receiving a car from his employer to his wife in his Statement of Financial Affairs. He failed to identify and concealed this transfer of his interest in the Toyota Tacoma from his employer to his wife, for his benefit, and at his direction, in an effort to hide the transfer and

his interests in the vehicle from the Debtor's creditors and bankruptcy estate, so as to delay, defraud and thwart creditors and the bankruptcy estate.

108.    At least once during the May 13, 2020 deposition, the Debtor slipped and seemed to refer to the Toyota Tacoma as belonging to both himself and his non-filing spouse, by stating "…it's her car, too."

109.    At the May 13, 2020 deposition, the Debtor admitted to driving the Toyota Tacoma, but had a hard time recalling how often, eventually landing on about a third of the time.

110.    The Debtor has engaged in a pattern of providing false, vague, and evasive testimony. He has at least one criminal conviction involving check fraud. His testimony denying his interests in the truck transaction is not credible.

WHEREFORE, Plaintiff respectfully requests the entry of a final judgment declaring that the Debtor be denied a discharge under 11 U.S.C. §727(a)(2)(A).

Dated: May 15, 2020

Respectfully Submitted,

MELISSA A. YOUNGMAN, P.A.

/s/ Melissa A. Youngman
Melissa A. Youngman
Florida Bar No.: 0690473
721 Maitland Avenue
Altamonte Springs, FL 32701
407.374.1372 (Phone)
melissayoungman@melissayoungman.com
*Attorney to Plaintiff*